IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LINDA SENN,                                          Civ. No. 3:18-cv-01814-HZ

                Plaintiff,              **OPINION & ORDER**

      v.

MULTNOMAH COUNTY, et al.,

                Defendants.
_____

HERNANDEZ, Chief Judge

      This civil rights case comes before the Court on a Motion for Summary Judgment filed by Defendants Multnomah County and Kyle Smith. ECF No. 65. The Court heard oral argument on March 1, 2021. ECF No. 82. For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following recitation is derived from the parties' Joint Concise Statement of Material Facts, ECF No. 62, and the supporting video exhibits.

      On October 12, 2016, the Portland City Council was scheduled to perform a second reading of an ordinance ratifying a collective bargaining agreement ("CBA") with the police officers' union. Plaintiff Linda Senn arrived at City Hall to attend a meeting of the Office of Neighborhood Involvement but learned of the CBA vote and decided to participate in public comment in that meeting.

The City Council meeting on the CBA ordinance was interrupted by members of the audience. The Mayor recessed the meeting and ordered City Hall closed to the public. Portland Police Bureau officers announced that City Hall was closed and that members of the public needed to leave the building or risk arrest. Police shouted "Move" and "Leave" as they pushed "visibly upset protestors" towards the building's exit, which opened on to SW 5th Avenue.

Senn took a position just outside the SW 5th Avenue exit and held the handle of the door with her left hand as police attempted to pull the doors closed from the inside. Portland police officers used pepper spray on protestors around the doorway. Protestors yelled at police and someone threw an "unidentified liquid" at the officers while Senn was standing near the City Hall doorway.

After Senn had spent more than a minute and a half in the vicinity of the doorway, a police sergeant reached around the doorway and sprayed Senn on the side of the head with pepper spray.[1] The spray hit Senn's hair and began slowly draining into Senn's left eye. Senn released the door and stepped away from the doorway but returned to the door shortly afterwards.

After Senn returned to the doorway, the Multnomah County Sheriff's Office Rapid Response Team ("RRT") arrived to clear the area around City Hall. The RRT members were dressed in body armor and other personal protective gear. Defendant Kyle Smith is a Deputy Sergeant with the Multnomah County Sheriff's Office ("MCSO") and was one of the members of the RRT on October 12, 2016. When he arrived at City Hall, Smith was carrying a cannister of pepper spray.

---

[1] The City of Portland disputed whether the officer sprayed Senn or merely brandished the pepper spray cannister in Senn's direction. The City and the officer in question are no longer parties to the case. Defendants agree that this dispute is not material for purposes of this motion, Def. Mot. at 3-4, and so, for purposes of this motion, the Court resolves the dispute in Senn's favor.

When the RRT arrived, the situation outside of City Hall was loud, with numerous individuals shouting over one another. Several members of the public, including Senn, were standing near the doors of City Hall. Two members of the RRT moved between Senn and the doorway and attempted to move Senn and another protestor, Allyson Drozd, away from the door. In the process, Senn came into physical contact with Deputy Sergeant Todd Brightbill, who was another member of the RRT.

The parties agree that the video shows Brightbill, Senn, and Drozd "appear to lose their balance or stumble away from City Hall as they make contact." As they stumbled, Smith fired two bursts of pepper spray, one targeting Senn and the other aimed at Drozd. Senn and Drozd immediately moved away from City Hall and toward the sidewalk on SW 5th Avenue. The entire encounter lasted a matter of seconds.

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## II.    Qualified Immunity

Defendants have raised the defense of qualified immunity.  A defendant is entitled to qualified immunity if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald¸* 457 U.S. 800, 818 (1982).  The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The right must have been clearly established at the time of the defendant's alleged misconduct, so that reasonable official would have understood that what he or she was doing under the circumstances violated that right. *Wilson v. Layne,* 526 U.S. 603, 615 (1999).  Courts have discretion in deciding which prong to address first, depending on the circumstances of the case. *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted).  "The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of

the case, not as a broad general proposition." *Id.* (internal quotation marks and citation omitted, emphasis in original).

Even if a right is clearly established, qualified immunity protects an official from reasonable mistakes about the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003). The official is still entitled to qualified immunity if the official "could have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.'" *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted).

## DISCUSSION

Senn brings claims against Multnomah County and Kyle Smith for violation of her Fourth Amendment and First Amendment rights pursuant to 42 U.S.C. § 1983. The County and Smith have moved for summary judgment as to all claims. In her Response, Senn concedes her claims against the County and agrees that those claims should be dismissed. Pl. Resp. at 2. ECF No. 75. The Court accepts that concession and all claims against the County are DISMISSED.

Senn asserts that Smith subjected her to excessive force in violation of her Fourth Amendment rights and that Smith's use of force constituted retaliation in violation of Senn's First Amendment rights. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the

deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

I.      **The Fourth Amendment and Excessive Force**

Senn contends that Smith's use of pepper spray constituted excessive force in violation of the Fourth Amendment.  Smith seeks summary judgment on the merits of the claim and asserts a defense of qualified immunity.

A.  **On the Merits of the Claim**

The Fourth Amendment requires police officer to use only an amount of force that is objectively reasonable considering the circumstances facing them.  *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985).  To determine whether a specific use of force is reasonable, court balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted).  Relevant factors include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting.  *Id.*  In conducting the *Graham* balancing test, courts first "assess the gravity of the particular intrusion on Fourth Amendment interests," then "assess the importance of the government interests at stake," before finally "balance[ing] the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable."  *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (internal quotation marks and citations omitted).

In the first factor of the *Graham* balancing test "[t]he gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured with reference to the type and amount of force inflicted."  *Young*, 655 F.3d at 1161 (internal quotation marks

and citation omitted).  Pepper spray is considered an "intermediate force," that "while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." *Id.*  In *Young*, the Ninth Circuit found that "there is no question that [the use of pepper spray] against an individual is a sufficiently serious intrusion upon liberty that it must be justified by a commensurately serious state interest."  *Id.* at 1162-63.  Consistent with *Young*, the Court concludes that the use of pepper spray against Senn was a serious intrusion that must be balanced by a serious government interest.

In evaluating the government's interest in the use of force, the "ultimate inquiry addresses whether the totality of the circumstances justifies a particular sort of seizure."  *Young*, 655 F.3d at 1163 (internal quotation marks and citation omitted, alterations normalized).  Among the factors to be considered are (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *Id.*  Of these factors, the most important is whether the individual posed an immediate threat to officer or public safety.  *Id.*

With respect to the severity of the crime, the Ninth Circuit has held that minor infractions, like trespassing, "justif[y], at most, only minimal use of force."  *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012).  In this case, Smith acknowledges that Senn was not charged with a crime but contends that Senn could have been charged with Interfering with a Peace Officer, a Class A misdemeanor under ORS 162.247(1)(b), or with Disorderly Conduct II, a Class B misdemeanor under ORS 166.025(1)(a).  Def. Mot. at 13.  These are relatively minor offenses and, as in *Nelson*, justify a comparably minimal use of force.

The second factor, whether the suspect posed an immediate threat to the safety of the officers or others, is the most important consideration in the analysis.  *Young*, 655 F.3d at 1163.

The "threat analysis must be based on objective factors and not merely a simple statement by an officer that he fears for his safety or the safety of others." *Nelson*, 685 F.3d at 880.

In this case, Smith contends that he believed Senn was pulling Brightbill down the steps and into a crowd of angry protestors and that his use of force was intended to neutralize what he perceived as a threat to Brightbill. Smith Decl. ¶¶ 10-11. Senn, on the other hand, maintains that she was stumbling backwards and touched Brightbill's arm in a reflexive attempt to steady herself. Counsel Decl., at 17.[2] ECF No. 76. Viewing the evidence, including the video evidence, in the light most favorable to the non-moving party, a reasonable jury could conclude that Senn did not present an immediate threat to Brightbill or the other members of the RRT.

The third factor requires courts to evaluate whether the plaintiff was actively resisting police. Resistance "should not be understood as a binary state, with resistance being either completely passive or active." *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). "Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Id.* Courts "must eschew ultimately unhelpful blanket labels and evaluate the nature of any resistance in light of the actual facts of the case." *Id.* "Even passive resistance may support the use of some degree of governmental force if necessary to attain compliance," but "the level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." *Nelson*, 685 F.3d at 881 (internal quotation marks and citation omitted). However, "a failure to comply with an officer's orders neither rises to the level of active resistance, nor justifies the application of a non-trivial amount of force." *Id.*

---

[2] At her deposition, Senn testified "I did touch one of the deputies as I was falling and I couldn't see. So just trying to stabilize myself and not seeing, inadvertently grabbed or touched a deputy maybe." Counsel Decl, at 17.

In this case, the use of force was based on Senn's debatable contact with Brightbill's arm in the midst of a protest. Of note, Senn testified that she touched Brightbill inadvertently, while stumbling backwards down the steps. Counsel Decl., at 17. Viewed in the light most favorable to the non-moving party, a reasonable jury could conclude that Senn was engaged in no more than passive resistance when Smith used pepper spray on her.

The balancing of governmental interests against an intrusion on individual rights generally requires a jury to sift through disputed factual contentions and draw inferences and so the Ninth Circuit has cautioned that summary judgment should be sparingly granted in excessive force cases. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). The Court has reviewed the record, giving particular attention to the video evidence, and concludes that there are disputed issues of material fact with respect to the physical contact between Senn and Brightbill, and the degree to which Senn was engaged in active resistance, which must be resolved by the trier of fact. A reasonable jury could conclude that the intrusion on Senn's Fourth Amendment rights outweighed the government interest in Smith's use of force. Smith is not, therefore, entitled to summary judgment on the merits of Senn's Fourth Amendment claim.

### B. Qualified Immunity

As discussed in the previous section, the Court concludes that Senn has made out a claim for violation of her Fourth Amendment rights and so, for purposes of the qualified immunity analysis, the Court will consider whether that right was clearly established on October 12, 2016. "To determine whether [an officer] violated clearly established law, we look to cases relevant to the situation [the officer] confronted, mindful that there need not be a case directly on point." *A.K.H. rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) (internal quotation marks and citation omitted). And, while there need not be a case directly on point, "existing

precedent must place the lawfulness of the particular [action] beyond debate," for which "a body

of relevant case law is usually necessary." *City of Escondido v. Emmons*, ___U.S.___, 139 S. Ct.

500, 504 (2019) (internal quotation marks and citation omitted).

Viewing the record in the light most favorable to the non-moving party, the Court must

accept that Senn was offering only passive or perhaps minimal resistance.  As the Ninth Circuit

recently observed, the "right to be free from the application of non-trivial force for engaging in

mere passive resistance" has long been established.  *Rice v. Morehouse*, ___F.3d___, No. 18-

35459, 2021 WL 853301, at *9 (9th Cir. Mar. 8, 2021) (quoting *Gravelet-Blondin v. Shelton*, 728

F.3d 1086, 1093 (9th Cir. 2013)).[3]

In *Young*, the Ninth Circuit held it is "rarely necessary, if ever, for a police officer to

employ substantial force without warning against an individual who is suspected only of minor

offenses, is not resisting arrest, and most important, does not pose any apparent threat to officer

or public safety." *Young*, 655 F.3d at 1167.  In *Headwaters Forest Defense v. Cnty. of Humbolt*,

the Ninth Circuit applied the same principle to the use of pepper spray against protestors who

were offering only passive resistance to arrest, holding that "[t]he law regarding a police

officer's use of force against a passive individual was sufficiently clear" in 1997 to put the

officers on notice that such force was excessive.  276 F.3d 1125, 1131 (9th Cir. 2002).  Likewise,

in *Nelson* the Ninth Circuit cited several cases holding that the use of non-trivial force was not

justified in the face of passive or minimal resistance.  685 F.3d at 881-82.

---

[3]Although the Supreme Court has cautioned that the right in question should not be framed at a high level of
generality, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019), the Ninth Circuit has endorsed this
formulation of the right as sufficiently specific in the qualified immunity context.  *Rice v. Morehouse*, No. 18-
35459, 2021 WL 853301, at *10 (9th Cir. Mar. 8, 2021).

Taken together, *Headwaters*, *Young*, and *Nelson* form a body of relevant case law concerning the use of substantial force against a passively resisting individual before the events of October 12, 2016.

In support of his qualified immunity argument, Smith cites *Jackson v. City of Bremerton*, in which the Ninth Circuit found no Fourth Amendment violation when the plaintiff's hair was pepper sprayed during a "melee," in which the plaintiff attempted to physically interfere with the arrest of a third party. 268 F.3d 646, 652-53 (9th Cir. 2001). The facts of *Jackson* are, however, distinguishable from the present case in multiple ways. First, the Ninth Circuit noted that the "nature and quality of the alleged intrusions were minimal" because the police sprayed the plaintiff's hair, rather than her eyes. *Id.* at 652. The Ninth Circuit also noted that the gathering had devolved into a "melee" and that "the officers, who were substantially outnumbered, were faced with a group that refused to obey the officers' commands to disperse; that shouted at the officers; and that engaged the officers in verbal and physical altercations." *Id.* at 652-53.

In the present case, by contrast, Senn was not engaged in a physical altercation with the police when Smith sprayed her, beyond her glancing and debatable contact with Brightbill's arm. Although the situation outside of City Hall was tumultuous, the "general disorder" of a situation cannot be used to legitimize the use of intermediate levels of force against non-threatening individuals. *Nelson*, 685 F.3d at 881. Furthermore, unlike the plaintiff in *Jackson*, Smith pepper sprayed Senn directly in the face.

Smith also contends that many of the excessive force cases involving pepper spray are distinguishable because those cases also involved the use of physical blows in conjunction with the spray. *See, e.g. Young*, 655 F.3d 1167 (involving the use of pepper spray and baton strikes); *Nelson*, 685 F.3d at 881 (involving the use of pepperball projectiles). The Ninth Circuit has held,

however, that "[t]he absence of concussive force is not determinative . . . and we have held that force can be unreasonable even without physical blows or injures." *Nelson*, 685 F.3d at 878 (internal quotation marks and citations omitted).  The absence of physical blows does not undermine the controlling and well-established authority provided by *Young*, *Nelson*, and *Headwaters*.

The Court concludes that the right in question was clearly established at the time of the incident and summary judgment based on qualified immunity is therefore denied.

## II.      The First Amendment and Retaliation

Senn alleges that Smith used pepper spray against her in retaliation for her perceived political hostility to the police or for her participation in a protest against adoption of a police union's collective bargaining agreement.

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  To prevail on a claim for First Amendment retaliation, a plaintiff must show (1) they engaged in constitutionally protected activity; (2) as a result she was subjected to an adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendant's action was substantially motivated by the constitutionally protected activity.  *Id.*; *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp.2d 1120, 1129-30 (D. Or. 2003).

A plaintiff must allege facts "ultimately enabling him to prove the elements of retaliatory animus as the cause of injury with causation being understood to be but-for causation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (internal quotation marks and citation omitted).  "It may be dishonorable to act with an unconstitutional motive and perhaps in some

instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Id.* (quoting *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008)); *see also Reichle v. Howards*, 566 U.S. 658, 668 (2012) ("An officer may bear animus towards the content of a suspect's speech.  But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat . . . then, the connection between the alleged animus and the injury may be weakened in the arrest context by a police officer's wholly legitimate consideration of speech.").

An intent to inhibit speech "can be demonstrated either through direct or circumstantial evidence." *Mendocino Env't Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available" and so "it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Id.* at 1302. The possibility that other inferences could be drawn that would provide an alternate explanation for the defendants' actions does not entitle them to summary judgment. *Id.* at 1303.  However, "speculation as to [the defendant's] improper motive does not rise to the level of evidence sufficient to survive summary judgment." *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003).

In this case, Smith contends there is no evidence that his decision to pepper spray Senn was motivated by an animus towards the purpose or content of Senn's protected speech.  Smith asserts that his use of the spray was motivated by Senn's physical contact with Brightbill, which Smith perceived as threatening.  Counsel Decl., at 27-28; Smith Decl. ¶¶ 10-11.  Smith testified that he could not hear anything Senn was saying during their encounter, Counsel Decl., at 31,

although he was aware that the "people around the doorway appeared to be upset with the police." Smith Decl. ¶ 9.

Senn contends that a discriminatory animus can be inferred from the fact that Senn was protesting the adoption of a police CBA by the city government, which Smith would have understood as political hostility towards the police. In his Declaration, Smith affirms that he and the other members of the RRT had been called in "to assist the Portland Police Bureau ("PPB") due to a civil disturbance that had erupted during a Portland City Council Meeting, created by angry protestors over a contract vote." Smith Decl. ¶ 6. That evidence does support an inference that Smith was aware of the purpose of the protest. But while such inferences are sufficient to sustain a claim at the pleading stage, a motion for summary judgment requires a plaintiff to go beyond the allegations of the complaint to show that there is some disputed issue of material fact. *Celotex*, 477 U.S. at 324. And in the context of retaliation claims, speculation about improper motives is not sufficient. *Karam*, 352 F.3d at 1194. The fact that Smith was likely aware of the purpose of the protest is not sufficient to create a triable issue of fact concerning a retaliatory animus or causation.

Senn also points to Smith's deposition, where he testified that he considers the makeup of a crowd and how members of the crowd are communicating with one another in deciding whether to use force. Counsel Decl., at 26. Read in context, however, Smith's testimony about the makeup of a crowd and the way it communicates refers to a practical assessment of the risk of the crowd becoming violent or destructive. *Id.* Smith did not testify that he routinely bases his response to protestors on the content of their protected expression, nor did he testify that he did so when he sprayed Senn.

On this record, Senn has failed to point to specific facts or evidence, direct or circumstantial, that create a genuine issue of material fact concerning Senn's claim for First Amendment retaliation. The Court therefore concludes that Smith is entitled to summary judgment on Senn's First Amendment retaliation claim and the Court need not reach the question of whether the right was clearly established for purposes of qualified immunity.

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF No. 65, is GRANTED in part and DENIED in part. Based on Plaintiff's concession, the claims against Defendant Multnomah County are DISMISSED. For the reasons set forth above, Defendant Smith is entitled to summary judgment on Plaintiff's claim for retaliation under the First Amendment and that claim is DISMISSED. Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Fourth Amendment claim alleging the use of excessive force.

It is so ORDERED and DATED this _____19_____ day of March 2021.

Marco A. Hernandez
Chief U.S. District Judge